IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS BRNE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-CV-02712 |
| | ) | |
| vs. | ) | Hon. Amy J. St. Eve |
| | ) | |
| INSPIRED eLEARNING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Inspired eLearning, LLC ("eLearning") has moved to dismiss Plaintiff Tom Brne's Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). (R. 11, Mot. to Dismiss.) For the following reasons, the Court grants Defendant's motion.

**BACKGROUND**

Plaintiff Thomas Brne is a United States citizen and a citizen of Illinois. (R.1, Compl., ¶ 2.) Defendant eLearning, a provider of corporate educational products, is a citizen of Texas, with both its headquarters and principal place of business in San Antonio. (*Id* ¶ 3.)

Defendant hired Plaintiff at will as a Regional Enterprise Account Executive in June 2014. (*Id.* ¶ 7.) As a condition of his employment, Plaintiff signed an employment agreement (the "Agreement") that contained an arbitration provision. (R. 18, Def.'s Repl. Ex. 1, Agreement.) The arbitration provision stated in relevant part, with key passages italicized:

(a) Arbitration.

Except as provided in subsection (b) below, *I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or*

1

> *any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in San Antonio, Texas in accordance with the rules then in effect of the American Arbitration Association* ["AAA"]. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. *The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.*
>
> (b) Equitable Remedies.
>
> I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5, 7 and, 9 herein. *Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement.* I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

(*Id.* § 11) (emphasis added.)

Defendant paid Plaintiff, who worked out of his home office in Illinois servicing mostly Midwestern clients, a base salary plus commissions, with double commissions for all sales exceeding Defendant's quota. (Compl. ¶ 8, 10; Pl.'s Resp., Ex. A, Dec. of Tom Brne ¶¶ 3-4.) Under Defendant's compensation plan, Defendant paid employees their commissions during the month that the customer's payment was received. (Compl. ¶ 12.) In 2015, Plaintiff was Defendant's top salesperson with the highest annual sales in the company's history. (*Id.* ¶ 13-14.) In 2016, he remained in the top half of Defendant's salespeople, and in September and October of that year he was again Defendant's top salesperson. (*Id.* ¶ 15.) Nevertheless, on October 21, 2016, Defendant terminated him for alleged "unsatisfactory performance." (*Id.* ¶ 16.) Plaintiff claims that, to date, Defendant has withheld and refuses to pay him over $92,000 that he has earned or will earn by 2018 as a result of multi-year deals he booked in 2015. (*Id.* ¶

17-21.)

On April 10, 2017, Plaintiff sued Defendant in the Northern District of Illinois, alleging a violation of the Illinois Wage Payment and Collection Act ("IWPCA"), and unjust enrichment. (*Id.* ¶ 22-28.) He also seeks declaratory judgment on the amount that Defendant will owe him by 2018. (*Id.* ¶ 29-31.) On June 12, 2017, Defendant brought the instant motion to dismiss pursuant to Rule 12(b)(3).

## LEGAL STANDARD

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, No. 14-2484, 2016 WL 4245497, at *5 (7th Cir. Aug. 11, 2016) (emphasis in original); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion). Against a Rule 12(b)(3) challenge, the court must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor. *See Gilman*, 2014 WL 1284499 at *2. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

**ANALYSIS**

In its motion to dismiss, Defendant argues that the arbitration clause in the Agreement is enforceable and covers Plaintiff's claims, and thus, the Court must dismiss this Complaint for improper venue. In response, Plaintiff argues (1) that Illinois law should govern the Agreement despite its Texas choice of law provision and (2) that under Illinois law, the arbitration clause in the Agreement is unenforceable. Here, the Court need not address whether Texas law or Illinois law governs the Agreement because, as discussed more fully below, under both Texas and Illinois law, the arbitration provision in the Agreement is enforceable and thus venue is improper in this Court.

The Supreme Court has recognized that the Federal Arbitration Act ("FAA") "declare[s] a liberal federal policy favoring arbitration agreements," *Perry v. Thomas*, 482 U.S. 483, 489 (1987), and it has affirmed that arbitration provisions are valid except for reasons that would undermine any type of contract. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 345-46 (2011). Accordingly, the Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) (citing *Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 91 (2000)).

"Arbitration agreements may be either substantively or procedurally unconscionable, or both." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015), *reh'g denied* (Sept. 11, 2015) (citations omitted); *Davis*, 26 F. Supp. 3d at 737 (applying Illinois law and stating "[a] finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both.") (citing *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006)). "Arbitration is strongly favored." *Royston*, 467 S.W.3d

at 499 (citations omitted). Accordingly, "once it is established that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement,[1] a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration." *Id.* at 499-500; *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 240 (Ill. App. 2008).

Procedural unconscionability relates to the formation of a contract and usually involves "unfair surprise," which may be evidenced by "overreaching or sharp practices combined with the [challenging party's] ignorance or inexperience." *Royston*, 467 S.W.3d at 499 (internal quotations omitted); *see also Davis*, 26 F. Supp. 3d at 737 (explaining that in Illinois, procedural unconscionability involves "some impropriety during the process of forming the contract" that deprives the challenging party of a meaningful choice). Typically, Texas and Illinois courts require that the party claiming unconscionability show that "one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English." *Velasquez v. WCA Mgmt. Co.*, No. 4:15-CV-02329, 2016 WL 4440332, at *10 (S.D. Tex. Aug. 23, 2016) (citations omitted); *Kinkel*, 857 N.E.2d at 264 (explaining that procedural unconscionability refers "to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it.") (citation omitted).

To demonstrate substantive unconscionability, a plaintiff must usually show that the contract's terms were excessively one-sided or oppressive. *Velasquez*, WL 4440332, at *10; *Kinkel*, 857 N.E.2d at 267 (explaining that in Illinois, "substantive unconscionability refers to

---

[1] The parties do not dispute that Plaintiff's claims are within the scope of the arbitration provision.

5

terms that are inordinately one-sided in one party's favor") (citations and internal quotations omitted). The standard for substantive unconscionability is demanding; a plaintiff must show that the terms were "sufficiently shocking or gross to compel the court to intercede. . ." *Ski River Dev. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005).

Here, Plaintiff argues that the Agreement's arbitration clause is unenforceable because (1) the clause requires the parties to share the cost of arbitration and (2) the clause requires each party to pay their own attorneys' fees regardless of the outcome of the arbitration. Importantly, both of Plaintiff's arguments relate to substantive unconscionability. Plaintiff has made no arguments and provided no evidence relating procedural unconscionability, and the parties do not dispute that Plaintiff signed each page with his initials or that the arbitration clause was not hidden, written in excessively small font, or buried within unrelated provisions. (*See* Agreement § 11.) Plaintiff has thus failed to show procedural unconscionability and his argument rests entirely on substantive unconscionability. The Court addresses each of his substantive unconscionability arguments in turn.

**I.      Cost-Sharing Provision**

Plaintiff argues that the arbitration's cost-sharing provision, which states that Defendant and Plaintiff "shall each pay one-half of the costs and expenses" of the arbitration, is unconscionable because it would be prohibitively expensive for him to split the costs of arbitration. Plaintiff notes that filing fees could be as much as $1,450 per party and that arbitrators' hourly rates run from $300 to $425 an hour, and argues that this would significantly cut into his recovery because he is only seeking $92,000 in damages here.

Texas and Illinois courts have held that the party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive must "provide

individualized evidence that [he] likely will face prohibitive costs in the arbitration at issue and that [he is] financially incapable of meeting those costs." *Bell v. Koch Foods of Miss., LLC*, 358 Fed. App'x. 498, 504 (5th Cir. 2009); *Bess*, 381 Ill. App. 3d at 241 ("In order to meet her burden, the party must provide some individualized evidence to show that she is likely to face prohibitive costs in the arbitration and that she is financially incapable of meeting those costs.") (citing *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). Where the party seeking to invalidate the arbitration provision fails to provide any individualized evidence that he is financial incapable of paying the arbitration costs, courts will refuse to find that the provision is unconscionable.

In *Bell*, for example, the plaintiffs estimated that they would have to pay between $27,000 and $29,000 in up front arbitration costs and argued that this amount was prohibitively expensive rendering the arbitration provision unconscionable. *Id.* at 503-04. The Fifth Circuit held that the provision was not unconscionable because "while the [plaintiffs] have provided their estimated costs of arbitration, [they] have not provided any individualized information about their ability to pay those costs," despite the fact that their ability to pay was within their personal knowledge.[2] *Id.* at 504; *see also Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 849–50 (Tex. App. 2013) (rejecting unconscionability argument because plaintiff failed to provide any individualized evidence "regarding its ability to pay arbitration costs" or its financial status); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (rejecting unconscionability claim in part because plaintiff failed to provide any information about her financial status); *Davis*, 26 F. Supp. 3d at 739 (same); *Bess*, 381 Ill. App. 3d at 244 (same).

---

[2] In *Bell*, the Fifth Circuit applied Mississippi law, however, the standards for substantive unconscionability in Mississippi and Texas are the same. *Carter*, 362 F.3d at 300 (applying individualized evidence standard to Texas law).

Here, while requiring Plaintiff to pay half the costs of arbitration might reduce his recovery, as noted above, Texas and Illinois courts require that a plaintiff not just show that arbitration may be expensive, but also provide individualized evidence that he cannot afford the costs of arbitration. *Bell*, 358 Fed. App'x. at 504; *Shamrock*, 392 S.W.3d at 849–50; *Livingston*, 339 F.3d at 557. Plaintiff has failed to provide any evidence about his financial status or his personal, individual ability to afford the cost of arbitration. Accordingly, Plaintiff has failed to carry his burden of showing the arbitration provision is substantively unconscionable due to its cost-sharing requirement.

## II.   Fee-Shifting Waiver

The arbitration provision also states that Plaintiff and Defendant each "shall separately pay our counsel fees and expenses." Plaintiff argues that this provision is unconscionable because the IWPCA provides that any employee who succeeds on a claim in a civil action "shall also recover . . . all reasonable attorney's fees," and thus a provision against fee-shifting would deprive Plaintiff of his rights under the statute. 820 Ill. Comp. Stat. Ann. 115/14. Defendant responds that the fee-shifting waiver provision is not unconscionable because the attorney's fees provision in the IWPCA is not an essential substantive right and because under AAA rules, the arbitrator would still retain the discretion to grant Plaintiff attorney's fees if he prevails, regardless of the language in the arbitration clause.

"Parties are generally free to contract for attorney's fees as they see fit," and thus provisions against fee-shifting are not per se unconscionable. *Venture Cotton Co-Op v. Freeman*, 435 S.W.3d 222, 231 (Tex. 2014). A party alleging unconscionability on grounds of absence of fee-shifting must therefore show concrete evidence of harm without resorting to

speculation. *Id.* at 232. Moreover, any such allegation must be viewed in light of a "strong presumption" favoring arbitration. *Carter*, 362 F.3d at 297. Courts in Illinois and Texas have usually found that fee-shifting waivers in arbitration agreements were unconscionable only when they contradicted mandatory fee-shifting rights that were a central component of the statute invoked in the dispute. *See Coronado v. DNW Houston, Inc.*, No. H-13-2179, 2015 WL 5781375, *10 (S.D. Tex. Sept. 30, 2015) (finding that a mandatory two-way fee-shifting provision violated the Fair Labor Standards Act, which permits fee-shifting only for a victorious plaintiff); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005) (severing arbitration provision requiring each party to pay its own attorney's fees because it conflicts with Title VII's attorney's fee-shifting requirement, which was a critical part of the statutory framework).

In *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 299–301 (Tex. App. 2008), for example, the plaintiff brought a claim under the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"). The plaintiffs claimed that their loan arbitration agreement was unconscionable due to a provision stating that the parties would share attorney's fees equally because under that provision the plaintiff would not be able to recover attorney's fees, as they would have under the DTPA, even if they prevailed on their DTPA claims in arbitration. *Id.* at 299. The court explained that the DTPA's primary purpose was to "to protect consumers by encouraging them to bring consumer complaints" and that the DTPA provided for attorney's fees "as encouragement to those abused by certain prescribed conduct to avail themselves of the remedies of the Act." *Id.* (citations omitted). Given this purpose, the court found that the arbitration agreement's provision was inconsistent with the purpose of the DTPA and thus substantively unconscionable. *Id.* at 300. The court explained that the plaintiffs did not forgo

their substantive rights under the statute when they agreed to arbitrate their claims and the attorney's fees provision in the DTPA was essential to its purpose because it makes it "feasible for consumers to avail themselves of the remedies of the DTPA."

Several other courts have similarly found attorney's fee-shifting waivers unconscionable when they contradicted attorney's fee-shifting provisions that were essential to the purpose of the statute in question. *See, e.g.*, *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) ("The district court properly determined that the proviso requiring each party to pay its own attorney's fees — regardless of the outcome of the arbitration — runs counter to statutory provisions under Title VII and ADEA that permit an award of attorney's fees and costs to a prevailing party."); *Graham Oil Co. v. ARCO Prod. Co., a Div. of Atl. Richfield Co.*, 43 F.3d 1244, 1247–48 (9th Cir. 1994), *as amended* (Mar. 13, 1995) (severing arbitration clause because it contained attorney's fee sharing provision that expressly forfeited plaintiff's statutorily-mandated right to recover attorney's fees, which was central to the Petroleum Marketing Practices Act because it "deter[s] franchisors from improperly contesting meritorious claims"); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 931 (N.D. Ill. 2005) (severing arbitration provision requiring each party to pay its own attorney's fees because it conflicts with Title VII's attorney's fee-shifting requirement, which was a critical part of the statutory framework).

Here, while neither the parties nor the Court has identified any case law interpreting the attorney's fees provision of the IWPCA as it pertains to unconscionability,[3] the IWPCA is analogous to many of the statutes discussed above that have attorney's fees provisions that courts

---

[3] *Palar v. Blackhawk Bancorporation, Inc.*, No. 4:11-CV-04039SLD-JEH, 2014 WL 4087436, at *3 n. 2 (C.D. Ill. Aug. 19, 2014) (noting that it is "unsurprising that there is not case law on the IWPCA's attorney's fees provision because it was only added in a relatively recent July 30, 2010 amendment.

deemed critical to their statutory framework. The Illinois General Assembly passed the IWPCA in 1973 "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016), *cert. denied,* 137 S. Ct. 2289 (2017). "The purpose of the IWPCA is to "ensure that employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." *McGrath v. CCC Info. Servs., Inc.*, 731 N.E.2d 384, 390 (2000). Thus, like the statutes discussed above, the IWPCA's purpose is to protect workers and encourage harmed workers to pursue claims against their employers and avail themselves of the remedies of the statute. The IWPCA also contains an attorney's fees provision mandating that a claimant who prevails in a civil action receive reasonable attorney's fees, and like the analogous statutes discussed above, this provision serves to encourage potential claimants, and their counsel, to pursue potential claims against their employers, even for relatively small damages, because if they prevail they will receive attorney's fees. *Palar v. Blackhawk Bancorporation, Inc.*, No. 4:11-CV-04039SLD-JEH, 2014 WL 4087436, at *4 (C.D. Ill. Aug. 19, 2014) (noting that attorney's fees provision in IWPCA is in place to enable claimants to obtain counsel and ensuring that they can pursue private suits). Accordingly, given the purpose of the IWPCA and the importance of the attorney's fees provision to ensuring the enforcement of the statute, under either Illinois or Texas law, the Agreement's provision requiring the parties to pay for their own attorney's fees is inconsistent with the IWPCA and thus substantively unconscionable.

Nevertheless, while the arbitration provision regarding attorney's fees is substantively unconscionable when applied to Plaintiff's IWPCA claim, that does not mean that Plaintiff's claim is not be subject to arbitration. Under Texas and Illinois state-law contract principles, "a

11

court is generally authorized to sever an illegal or an unenforceable provision from a contract and enforce the remainder of the contract." *Sanders*, 264 S.W.3d at 301 (Tex. App. 2008) (citations omitted); *Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978) (an illegal provision may be severed if it does not constitute the main purpose of the contract); *Safranek*, 379 F. Supp. 2d at 935 ("Under Illinois law, a court may, in its discretion, modify a contract so that it comports with the law or sever unenforceable provisions from a contract.") (citations omitted). "Severability is determined by the intent of the parties as evidenced by the language of the contract." *Sanders*, 264 S.W.3d at 301; *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 757 (N.D. Ill. 2015) (severing provision in arbitration clause due to intent of parties to allow severance as demonstrated by parties' inclusion of clause allowing severance clause). Here, the Agreement expressly allows the severance of unenforceable provisions. (*See* Agreement § 13(c)) ("If one or more of the provisions in this Agreement are deemed void by law . . . then the remaining provisions will continue in full force and effect.") Given the clear language in the Agreement and the strong federal policy favoring arbitration, under both Illinois and Texas law, severance of the attorney's fees provision is appropriate here.

Accordingly, the Court severs the portion of the arbitration clause requiring each party to bear its own attorney's fees—and that portion only. *Sanders*, 264 S.W.3d at 301 (severing attorney's fees clause and finding rest of agreement enforceable); *Safranek*, 379 F. Supp. 2d at 935 (severing attorney's fees provision, enforcing remainder of arbitration provision, and ordering parties to arbitrate). The remainder of the arbitration clause is enforceable, and as such, Plaintiff must pursue his claims through arbitration without the application of the provision requiring each party to bear his own attorney's fees.

## CONCLUSION

For these reasons, the Court grants Defendant's Rule 12(b)(3) motion to dismiss and orders Plaintiff to pursue his claims via arbitration in Texas. *See Faulkenberg*, 637 F.3d at 808 ("a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district.") (citations omitted).

Dated: September 26, 2017

        **ENTERED**

        *[signature]*
        **AMY J. ST. EVE**
        **United States District Court Judge**